IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| ACUITY, A MUTUAL INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) No. _____ |
| BOBBY FRYAR TRUCKING, and NATHANIEL HENRY, | ) ) ) ) |
| Defendants. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Comes now the Plaintiff, Acuity, A Mutual Insurance Company ("Acuity"), pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, and for its Complaint for Declaratory Judgment, alleges as follows:

### I. THE PARTIES

1. Acuity is an insurance company incorporated under the laws of the State of Wisconsin and authorized to transact business in the State of Tennessee.

2. Bobby Fryar Trucking Co. Inc. ("BFT") is a for-profit corporation located and operating in Hamilton County, Tennessee. BFT has a principal place of business located at 1017 E 38th St., Chattanooga, Tennessee. BFT may be served through its registered agent, Bobby Fryar at 1017 E 38th St., Chattanooga, Tennessee 37407-2437.

3. The defendant, Nathaniel Henry ("Henry") is a resident of the State of North Carolina and may be served at his residential address at 1105 Carters Ridge Road, Spruce Pine, North Carolina 28777.

## II. VENUE AND JURISDICTION

4. Acuity incorporates by reference the allegations contained in paragraphs 1 through 3.

5. This case is brought pursuant to the Declaratory Judgment Act as codified in 28 U.S.C. § 2201 and Fed. R. Civ. P. 57. Jurisdiction is proper within this Court pursuant to 28 U.S.C. § 1332 as the parties to this action are citizens and residents of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. Furthermore, at issue is an insurance contract negotiated in the Eastern District of Tennessee and delivered in the Eastern District of Tennessee. Therefore, jurisdiction within the U.S. District Court for the Eastern District of Tennessee is proper.

6. As will be more fully set forth below, Acuity issued policy number Z66093 to BFT for the policy period of May 19, 2021, through March 9, 2022 ("the policy"). The policy was negotiated and delivered in the Eastern District of Tennessee. At the times relevant to this Complaint, Acuity did not write and/or deliver insurance coverage in the State of Georgia. Because the policy that is the subject of this Declaratory Judgment Action was negotiated and delivered in the Eastern District of Tennessee, venue and jurisdiction are proper in this Court and in this Division pursuant to 28 U.S.C. § 1391.

## III. FACTS

7. Acuity incorporates by reference the allegations contained in paragraphs 1 through 6.

8. On June 10, 2021, a truck that was owned by BFT was involved in a motor vehicle accident. The truck was being operated by Henry. While operating the truck, Henry was traveling behind Alice Letson ("Letson") in Murray County, Georgia. Letson

slowed her vehicle to make a left-hand turn onto Hawkins Branch Road when Henry failed to slow down and collided with Letson's vehicle.

9. On November 10, 2021, Letson filed a lawsuit against BFT, Acuity, and Henry in the Superior Court of Gwinnett County, Georgia, docket no. 21-C-08073-S6 ("the underlying lawsuit"). Acuity was added as a named defendant allegedly under Georgia's direct-action statute. See O.C.G.A. §§ 40-1-112, 40-2-140 *et seq*. A true and accurate copy of the underlying lawsuit is attached hereto as "**Exhibit A**".

10. The underlying lawsuit seeks punitive damages against BFT and Henry for "reckless, willful and wanton" conduct. See Ex. A, ¶ 32.

11. On the date of the accident, Acuity was the liability insurer for BFT under the policy. A true and accurate copy of the policy is attached hereto as "**Exhibit B**".

12. Acuity, as the liability insurer of BFT, is providing BFT and Henry with a defense in the underlying lawsuit under reservation of rights.

13. The policy was issued and delivered to BFT at the address of 1017 E 38th St., Chattanooga, Tennessee 37407. The agency identified on the policy was RSS Insurance located in Chattanooga, Tennessee. All negotiations for the policy took place in Tennessee.

14. The policy provided the following insuring agreement with respect to commercial auto liability ("auto liability") coverage:

### SECTION II - LIABILITY COVERAGE

**A. COVERAGE**

We will pay all sums an *insured* legally must pay as damages because of *bodily injury* or *property damage* to which this insurance applies, caused by an *accident* and resulting from the ownership, maintenance or use of a covered *auto.*

We will also pay all sums an *insured* legally must pay as a *covered pollution cost or expense* to which this insurance applies, caused by an *accident* and resulting from the ownership, maintenance or use of covered *autos.* However, we will only pay for the *covered pollution cost or expense* if there is either *bodily injury* or *property damage* to which this insurance applies that is caused by the same *accident.*

We have the right and duty to defend any *insured* against a *suit* asking for such damages or a *covered pollution cost or expense.* However, we have no duty to defend any *insured* against a *suit* seeking damages for *bodily injury* or *property damage* or a *covered pollution cost or expense* to which this insurance does not apply. We may investigate and settle any claim or *suit* as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

15. Under this insuring agreement, the damages must arise from an "accident," which is defined in the auto liability portion of the policy as follows:

**SECTION V – DEFINITIONS**

**A.** *"Accident"* includes continuous or repeated exposure to the same conditions resulting in *bodily injury or property damage*.

16. The policy provided the following language regarding who is an insured under the policy:

**1. Who Is an Insured**

The following are *insureds:*

**a.** You for any covered *auto.*

**b.** Anyone else while using with your permission a covered *auto* you own, hire or borrow except:

(1) The owner or anyone else from whom you hire or borrow a covered *auto.* This exception does not apply if the covered *auto* is a *trailer* connected to a covered *auto* you own.

(2) Your *employee* if the covered *auto* is owned by that *employee* or a member of his or her household.

(3) Someone using a covered *auto* while he or she is working in a business of selling, servicing, repairing, parking or storing *autos* unless that business is yours.

(4) Anyone other than your *employees,* partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their *employees,* while moving property to or from a covered *auto.*

(5) A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered *auto* owned by him or her or a member of his or her household.

**c.** Anyone liable for the conduct of an *insured* described above but only to the extent of that liability.

17. Henry is an insured under the policy as he was using a covered auto with the permission of BFT when the accident giving rise to the underlying lawsuit occurred. Thus, Acuity is defending BFT, as the named insured under the policy, and Henry, as an insured by definition, under reservation of rights in the underlying lawsuit.

18. The auto liability portion of the policy provided the following language regarding limits of insurance:

### SECTION II - LIABILITY COVERAGE
****

**C. LIMIT OF INSURANCE**

Regardless of the number of covered *autos, insureds,* premiums paid, claims made or vehicles involved in the *accident,* the most we will pay for the total of all damages and *covered pollution cost or expense* combined, resulting from any one *accident* is the Limit of Insurance for Liability Coverage shown in the Declarations.

All *bodily injury, property damage* and *covered pollution cost or expense* resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one *accident.*

No one will be entitled to receive duplicate payments for the same elements of *loss* under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

19. The auto liability portion of the policy provided an insurance limit of $1,000,000 per "accident", which means Acuity should be obligated to pay no more than $1,000,000 of any judgment rendered against BFT and/or Henry in the underlying lawsuit, under the auto liability portion of the policy.

20. The policy also provided commercial excess liability coverage ("excess liability") under the following insuring agreement:

### SECTION I – COVERAGES

1. **Insuring Agreement**

    a. We will pay those sums, in excess of the amount payable under the terms of any *underlying insurance,* that the insured becomes legally obligated to pay as damages because of *injury* or damage to which this insurance applies, provided that the *underlying insurance* also applies, or would apply but for the exhaustion of its applicable Limits of Insurance.

    We will also pay those sums that the insured becomes legally obligated to pay as damages because of *injury* or damage to which the insurance provided under the Coverage Extension applies as set forth in paragraph 4 below.

    b. We have the right to participate in the investigation or settlement of claims or the defense of the insured against suits seeking damages because of *injury* or damage to which this insurance may apply. We have a duty to investigate or settle such claims or to defend the insured against such suits when the applicable Limit of Insurance of the *underlying insurance* has been used up by payment of judgments, settlements and any cost or expense subject to such limit.

    We will have the right and duty to participate in the investigation and settlement of claims or the defense of the

insured against suits seeking damages because of *injury* or damage to which the insurance provided under the Coverage Extension may apply.

This right or duty to defend is limited as set forth in paragraph 3 below.

However, we will have no duty to defend the insured against any suit seeking damages for *injury* or damage to which this insurance does not apply.

    **c.**    The amount we will pay for damages is limited as described in Section II - Limit of Insurance.

    **d.**    This insurance is subject to the same terms, conditions, agreements, exclusions and definitions as the *underlying insurance,* except:

        (1)    We have no obligation under this insurance with respect to any claim or suit that is settled without our consent; and

        (2)    With respect to any provisions to the contrary contained in this insurance.

21.    The excess liability portion of the policy also provided the following:

**SECTION II - LIMIT OF INSURANCE**

**1.**    The Limits of Insurance shown in the Declarations and the rules below define the most we will pay under the terms of this insurance regardless of the number of:

    **a.**    Insureds;
    **b.**    Claims made or suits brought;
    **c.**    Persons or organizations making claims or bringing suits.

**2.**    The General Aggregate Limit is the most we will pay for all damages under Section I -Coverages, other than damages arising out of:

    **a.**    The *products-completed operations hazard;* or
    **b.**    The ownership, operation, maintenance, use, loading or unloading, or entrustment to others, of an auto.

22.    The excess liability portion of the policy defined "Aggregate limit" as:

1. *"Aggregate limit"* means the maximum amount stated in the policy for which the insurer will be liable, regardless of the number of covered claims.

22. The excess liability portion of the policy provides a general aggregate insurance limit of $1,000,000, which means Acuity should be obligated to pay no more than $1,000,000 of any judgment rendered against BFT and/or Henry in the underlying lawsuit, under the excess liability portion of the policy. Together, under both the auto liability portion of the policy and the excess liability portion of the policy, Acuity should be obligated to pay no more than $2,000,000 of any judgment rendered against BFT and/or Henry in the underlying lawsuit.

23. Moreover, the policy also contained Endorsement CA-7100 (8-17), the Motor Carrier Act of 1980 Endorsement ("the MCS-90"), which provided as follows:

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo.
>
> It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account for any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

24. This endorsement amended the definition of "accident" as

follows:

**ENDORSEMENT FOR MOTOR CARRIER POLICIES OF INSURANCE FOR PUBLIC LIABILITY UNDER SECTIONS 29 AND 30 OF THE MOTOR CARRIER ACT OF 1980 (MCS-90)**

**DEFINITIONS AS USED IN THIS ENDORSEMENT**

***Accident*** includes continuous or repeated exposure to conditions which results in bodily injury, property damage, or environmental damage which the insured neither expected nor intended.

## IV. DECLARATORY RELIEF SOUGHT

25. Acuity incorporates by reference the allegations contained in paragraphs 1 through 24.

26. Acuity seeks a declaration from this Court that Tennessee substantive law will guide any assessment of contractual and extra-contractual obligations under the policy because Georgia, as well as Tennessee, follows the choice of law rule, *lex loci contractus*. See Shorewood Packaging Corp. v. Commercial Union Ins. Co., 865 F. Supp. 1577, 1578 (N.D. Ga. 1994). Further, the policy's most significant contacts all lie within the State of Tennessee. Therefore, because the policy was delivered in Tennessee to a Tennessee corporation by RSS Insurance Agency located in Chattanooga, Tennessee, Acuity alleges and avers that Tennessee substantive law will guide any assessment of contractual and extra-contractual obligations.

27. Acuity seeks a declaration that as a result of Tennessee substantive law guiding any assessment of contractual and extra-contractual obligations, Acuity alleges and avers that it cannot be liable for more than the policy limits under the policy contract itself, which is $2,000,000 in this matter. Acuity will not be required to indemnify BFT and/or Henry for any portion of the verdict in the underlying lawsuit exceeding $2,000,000.

AU Bobby Fryer Trucking Compl DJ 220329

Case 1:22-cv-00081-CLC-CHS   Document 1   Filed 04/06/22   Page 9 of 12   PageID #: 9

28. Acuity seeks a declaration from this Court that coverage for any award of punitive damages against BFT and/or Henry in the underlying lawsuit will be analyzed and judged by Tennessee substantive law.

20. Acuity alleges and avers that under Tennessee law, willful misconduct does not constitute an "accident" as required by the policy. See <u>Gassaway v. Traveler's Ins. Co.</u>, 439 S.W.2d 605, 608 (Tenn. 1969). Therefore, Acuity alleges and avers that because Tennessee law guides any assessment of coverage, there can be no coverage under the policy for any award of punitive damages against BFT and/or Henry for willful misconduct.

30. Acuity avers and alleges that the MCS-90 only provides a duty to indemnify the named insured if the underlying policy does not provide coverage. Thus, Acuity alleges that Henry would not be entitled to any coverage under the MCS-90 because he is not a named insured under the policy.

31. Acuity avers and alleges that the MCS-90 does not provide coverage for any award of punitive damages for willful misconduct because the MCS-90 only provides coverage for negligence.

32. Acuity further relies upon all other language, provisions, terms, conditions, and exclusions of the policy in this Declaratory Judgment Action.

**WHEREFORE**, **premises considered,** Acuity prays as follows:

1. That the Defendants be required to appear and answer herein;

2. That this Court adjudicate and declare that Tennessee substantive law will guide any assessment of contractual and extra-contractual obligations under the policy;

3. That this Court adjudicate and declare as a result of Tennessee substantive law guiding any assessment of contractual and extra-contractual obligations, Acuity

cannot be liable for more than the policy limits of $2,000,000;

4. That this Court adjudicate and declare that Acuity is not obligated to indemnify BFT for any award of punitive damages for willful conduct because it is not covered under the policy;

5. That this Court adjudicate and declare that Acuity is not obligated to indemnify Henry for any award of punitive damages for willful conduct because it is not covered under the policy.

6. That this Court adjudicate and declare that Acuity is not obligated to indemnify BFT for any award of punitive damages for willful conduct under the MCS-90 Endorsement because it is not covered.

7. That this Court adjudicate and declare that the MCS-90 Endorsement does not provide coverage to Henry because he is not a named insured under the policy.

8. That the costs of this action be assessed against the Defendants; and

9. For such further legal and equitable relief as this Court deems just and proper.

Respectfully submitted,

 s/Hannah J. Leifel_____
**PARKS T. CHASTAIN**
Registration No. 13744
DIRECT: (615) 630-7717
(615) 256-8787, Ext. 114
pchastain@bkblaw.com
Attorneys for Acuity, A Mutual Insurance Company
**HANNAH J. LEIFEL**
Registration No. 038632
DIRECT: (615) 630-7722
(615) 256-8787, Ext. 152
hleifel@bkblaw.com
Attorneys for Plaintiff, Acuity, a Mutual

Insurance Company

**BREWER, KRAUSE, BROOKS & CHASTAIN, PLLC**
545 Mainstream Drive, Suite 101
Nashville, TN 37228